24-3155 Western Arkansas United States v. Isaac Charles 24-3155 Western Arkansas United States v. Isaac Charles Good morning. Mr. Baker, we'll hear from you first. Court appreciates your willingness to accept the assignment in this case under the Criminal Justice Act and you may proceed. May it please the court, Chris Baker here on behalf of Isaac Charles and I'd like to reserve three minutes. Well, the clock will continue to run so you'll have to sit down if you want to save any time. Like many political issues today, the Second Amendment is currently suffering from a two-fold problem. Either our inability or our refusal to give meaning to words. Common use, unusual, dangerous. These are all terms that are frequently used and there is absolutely no definition that puts anybody on any sort of notice or limitation to what applies to them or what those things can be. We have seen the ATF modify and change the definitions of machine guns. Stocks were converted to machine guns and items are prohibited. On a facial challenge, you have a huge hill to climb. It could not be steeper. I think the federal courts are almost uniform with the exception of a couple of district courts on machine guns. There are at least some applications, which is the Salerno standard. They applied in Rahimi. There's at least some applications that have to be constitutional. For example, anti-aircraft guns on a battleship. Those are not bearable arms. Judge Nalbandian and Judge Bumate pointed that out in their separate opinions. Don't you lose because you can't even get past step one on a facial challenge. It is our position that the firearm is a firearm. The operation of the firearm is a technical definition aside from that. What you're calling how something functions doesn't change at the base what it is. On that point, this one is bearable. I think we're talking about a Glock with a 3D printed switch. This one is bearable. The problem is some things that qualify as machine guns are not things you can carry. You have a right to bear arms. It needs to be a bearable arm. In the facial challenge, you look at the whole universe of things is what I'm really getting at. I don't necessarily consider. I was on submarines. Your Honor, we had torpedo tubes. I couldn't carry a torpedo. I don't consider that to be an arm in the context. These things must be read in context. They have to be bearable arms. The problem with machine guns is there are all kinds of machine guns that can't actually be born. You start with the class that anti-aircraft guns, which are in fact just machine guns, giant caliber. They can't be carried around. There also are large machine guns that are on wheels that are rolled around into battlefield sites. They can't be born. On a facial challenge, you've got to somehow undermine that definition to say that those things fall outside of the definition of a machine gun. Your Honor, the Constitution doesn't talk about machine guns. It talks about arms. It talks about bearable arms. The right to bear arms, right? Then we should look at, is a device a bearable arm? What the ATF calls something should not have the determinative outcome. That sounds an awful lot like as an applied challenge, right? I mean, because you're saying we have to look at what? This particular gun. Well, that's as applied. They are prohibiting the arm itself. Right, and if any arm falls within the bounds of the Constitution on a facial challenge, falls within the definition of the statute, then you don't have briefing following Rahimi. That was foreclosed by the Fincher decision. Why isn't Fincher just controlling? Why isn't that the end of the case? Because Fincher did not consider the history and tradition, Your Honor. It didn't break down what is arms. There was no true historical analysis done. So, its reasoning and core is eviscerated by Bruin. You think Bruin overruled Heller? Bruin gave a lot of context to Heller. I mean, the holding of Heller. It's not inconsistent with Heller and Fincher said under Heller, well, you know what it said, it's under Heller. Machine guns are not in common use by law-abiding citizens for lawful purpose. Well, that's not the holding of Heller, Your Honor. No, that's the holding of Fincher. But there is no evidence that the machine guns are not in common use. First, what is common use? There's 2.3 million registered machine guns. Well, aren't you just arguing that Fincher was wrongly decided? I'm arguing that there was no history and tradition analysis conducted in Fincher. Well, I mean, in Fincher, you also have a... It's just an argument that it was wrongly decided. It seems to me you're saying they did insufficient analysis in your view, but they came to the conclusion. And normally, we're bound by circuit precedent unless some later decision supersedes it. I did not read the Fincher to specifically say just that, Your Honor. Okay. But, you know, give some examples from the 20-A-J notice that the government cited coming out of U.S. v. Morgan. Not in common use for self-defense. But these things aren't true, Your Honor. 2.3 million registered firearms, 782,000 of those belong to people. Well, and one more question on Fincher. I was going to ask, there's a problem even under Heller with Fincher. I understand, this read to me like Heller came out at the last second. And we said, okay, it's consistent with Heller. Because all the underlying reasoning... That's not very fair to Judge Wohlman, is it? To say it's the last second decision and therefore you didn't analyze Heller? Can I ask my question? Please. But, so, what I was going to finish before I was interrupted was I was going to say that it relies on the militia throughout. And the way it read was, even the first line admits that it was sort of a last second. Heller's come out in the interim. We've been working on it. I mean, this is how it read to me. We've been working on this decision. And there's all this analysis of the militia, which prior to, you know, prior to Heller was a predominant view of the Second Amendment that was rejected in Heller. And it never sort of even came to grasp with the fact that Heller took away one of its underlying rationales. I don't know. Did you read it the same way? I think that is fair, Your Honor. One of the keys from Heller was that Heller uses a conjunctive, keep, keep and bear. This prohibits all the guns in the house. You can't have a The only weapons protected under the Arkansas Constitution are weapons of war. Now, it may be because I have a GED and I didn't take the same history classes as other people, but the last I checked, America was not founded for duck hunting and self-defense. The Second Amendment protects more scope than that, whether we like to admit it or not. And that has been consistent at a minimum in the state of Arkansas for 130 plus years. These rules overreach and prohibit this protected conduct in that we really should focus on triggers are still available. They don't fall under the general definition of unusual because they're not firing thousands of rounds. They're not unlimited. So I have a different question. So even under Bruin, you talked about Bruin. I think you lose even under Bruin because we've already talked about step one. But even at step two, 3D printed switches, it may be as one thing, and I'm not even sure this is right, that switches are sort of in common use. But it strikes me as really an odd argument to say that 3D printed switches, which you do on a home printer, is something that anyone other than criminals and dangerous people would use. I don't know many people who are law-abiding that print off 3D printed switches. Well, if it weren't for recent regulations to the history of our country, Your Honor, they probably wouldn't be banned and probably wouldn't be illegal. Wait a minute. That doesn't answer the question. The question in Heller and Bruin is they did say that typically possessed by law-abiding citizens for lawful purposes. And so the question is, is there any group of human beings out there that possess these type of 3D printed devices who are law-abiding for lawful purposes? Does that group of people exist? I don't think there is such a group. There's 792,000 lawfully possessed machine guns in the United States. Yeah, they're lawfully possessed machine guns that are all registered, you know, and they're all tracked by the United States government, you know, and you had to buy a license to buy them, right? They do not print devices to transform a regular handgun, a semi-automatic handgun, into a fully automatic weapon. And who does that? Is there any law-abiding person that does that? That converts weapons, Your Honor? Yeah, from partially, from being semi-automatic weapons to fully automatic weapons. Are there law-abiding people that do that? On a printer. Yeah, on a printer. On a printer, no, because... Doesn't that answer your whole question? No, absolutely does not. Just because there's an innovation in technology doesn't mean that people that engage in that technology are automatically criminals. Wow. Or would be criminals. That's entirely speculative. What's the lawful purpose for doing this? The Second Amendment to the United States Constitution, Your Honor. That sounds sort of circular. I mean, so it's saying that, well, because there's a 3D printer, that the other three-quarter of a million people have to be somehow unlaw-abiding just because they have a machine gun. Well, no. The other three-quarters of a million people are known, and they're identified, and they have a machine gun that's been built in a way that's got some indicia of safety, right? I mean, it's not some cobbled-together thing that somebody does in their basement with a 3D printer that they spent $142 at at Best Buy. The government has chosen to fully ban this, not regulate it in that fashion, Your Honor. Okay. Very well. Thank you for your argument. Thank you. Mr. Eaton, we'll hear from you.  May it please the Court, my name is Kevin Eaton, and I represent the United States. The district court in this case properly denied Charles's post-plea motion to dismiss. Its decision was based upon a very straightforward reading of this Court's decision in Fincher and the Supreme Court's decision in Heller, two decisions which remain binding law despite Bruin and despite Rahimi. Because machine guns are not protected by the Second Amendment, the district court was correct to reject Mr. Charles's argument. At the outset, it's important to note that the only challenge properly before this Court is his facial challenge, and that's because he's entered a guilty plea. And as the Court noted, the facial challenge is especially hard to meet. And as courts have concluded, a facial challenge to 922-0 fails because 922-0, by sweeping in the broad definition of machine gun, includes arms within that definition which are not bearable. And therefore, because 922-0 regulates arms that are not bearable, it's impossible for Mr. Charles to show that applying 922-0 would always violate the Second Amendment. And therefore, his facial challenge fails. And this Court need go no further in order to answer the only question that's live on appeal today. Well, on that, I think you're arguing from Rahimi and Salerno, right? I mean, that's, that's, I mean, the most recent pronouncement is about are all as-applied challenges off the tape, you know, would they be successful? Are there some that would not, you know, basically? That's correct, Your Honor. All applications are unconstitutional. Correct, Your Honor. And that's why Mr. Charles simply can't make that showing in this case. If the Court chooses to instead resolve this case the way the district court did, it does not need to reassess its decision in Fincher. It simply needs to follow what the Court said in Heller, which is that the Second Amendment does not protect those arms that are not typically possessed by law-abiding citizens for lawful purposes. There has been no showing that machine guns are in common use. That's, there's been no showing at step one of Bruin, and so we don't even get to steps. So two questions on the Fincher. One is, and Judge Erickson asked about this earlier, what do we do with those people who use them pre-1986? Like, my understanding is I'm not a machine gun user or holder or possessor, but my understanding is they're very similar in operation. There hasn't been, like, some massive change between, it's a regulatory decision. There hasn't been some massive change. What do we, first of all, what do we do with those? Your Honor, the government is not prosecuting people, to my knowledge, who lawfully have possessed those. Those machine guns were grandfathered in if they were possessed before 1986. So that's, that's the answer to question one. But doesn't that, but doesn't that kill your not in common use argument? I mean, because you'd have to argue that the ones after 1986 are not in common use, or not in common use, but the ones pre-1986 are in common use, I think, unless you're saying something different. No, Your Honor. And I think this is where the courts have been splitting on how to define common use. And the reason we submitted the 28J letter is because the Tenth Circuit recently said, under any of the approaches that have been used to determine whether it's in common use, the registered, number of registered machine guns would fail under any of those metrics. Whether it's a pure numbers game, or whether it's a comparison of the proportion, or whether it's an inquiry into whether legislatures, both at the State and Federal level, have historically regulated this, machine guns simply are not in common use. The second thing I want to ask you about, and we have a series of cases, and this was what I was getting at in the question, Your Honor. Cytlidine was the most, was the first one in this line, Grunder's, Grunder's opinion. I think Cooper also talks about this. So there's a whole series of opinions. But we say, look, we've got to kind of supplement, when, when the history and tradition test hasn't really been done, we need to sort of supplement the analysis and go forward and do a little bit more work. And the way I read Fincher is there's a very heavy reliance on the militia, which is something that was categorically rejected. Now, maybe the panel didn't notice it. I don't know. And maybe the government disagrees. But that's how I read the opinion. What's your response to that? Your Honor, I think the reason why the court in Fincher spent time talking about the militia is, as I recall, the defendant in that case was seeking to put before the jury information that he was involved in, in a militia. And I forget the name of the organization. So I think that's why the court was focused on that. But what the court grounded itself in Fincher was in Heller's statement. And Heller itself employed a historical analysis. So the government's position is not that we need to reassess that history, because Heller did the historical work. If it were a case where simply this court in Fincher had relied on dicta or something where it was a much slimmer read to support its decision, then perhaps we would need to do the analysis anew. But Fincher grounded itself in Heller's statement. And nothing about Bruin or Rahimi has undermined those statements. There is no evidence that the test that we use has been abandoned. In fact, I believe in Veazley, which you wrote for the court, we say as a threshold matter, because for drug users, they wanted to possess a firearm which is in common use. So that common use is very an accepted part of our analysis. But Heller itself, do you think Heller itself dealt with machine guns? Or would the reliance be Fincher relying on Heller? I just want to understand the government's argument on that point. Your Honor, there is mention in Heller about machine guns. In fact, at the conclusion of its statement that the Second Amendment does not protect arms not typically possessed, it gave a specific example, which are M16s. That is a machine gun. And it said those may be banned. Now, again, I wouldn't suggest relying solely on that statement to ground its decision. But nevertheless, the court did confront that at least a little. And the court has, as we note in our brief, continued to say that machine guns are dangerous and unusual. So the court has reached that at some point in its decisions. You do agree. And this is my last question, at least on this point. You do agree. And you're kind of making the question, does the government agree with the bearable questionings we were asked about Step 1 and then Step 2, that criminals are the ones who are going to be making these 3D printed switches? Or does the government view the case differently than some of the questioning that would suggest? I'm sorry. I'm not sure I understood the question. So my question is, we were talking a lot about the fact that some machine guns are not bearable. Right. Right. And we were talking about Step 1. And then Step 2, we were talking about the fact that mostly criminals would be the ones that would be 3D printing. Judge Erickson asked, asking a number of questions. Does the government agree with that line of analysis? I know you've also argued that we should rely on Fincher. But does the government agree with that line of analysis? Or do you disagree? Yes, Your Honor. For the purposes of this appeal, it's enough for this Court to say that because 922-0 includes, within its definition of machine guns, things that are not bearable arms, the facial challenge is doomed as to that point. As to your more specific point about the 3D series, Judge Nalbandian's concurring opinion in the Sixth Circuit case goes into a lot of analysis of why those particular types of machine guns might be especially subject to government regulation. That's not necessary for this Court to get into, because there is no live-as-applied challenge based on the type of machine gun that Mr. Charles possessed. But certainly, that is something that I believe the government will continue to argue, is that these particular 3D-printed Sears are the kinds of dangerous and unusual weapons, even if we get to Step 2 of Bruin, that should and could be regulated by the government. It is the government's position that under Step 1, the existence of heavy machine guns, those being ones that are not capable of being borne, that those heavy machine guns foreclose the facial challenge, and that's the end of this case, because all we have before us is a facial challenge. Yes, Your Honor. That's all this Court needs to decide, is that the facial challenge is doomed because that definition is as expansive as it is and, therefore, covers arms that don't implicate the Second Amendment. And as a necessary result, Charles can't possibly show that applying 922-0 would always violate the Second Amendment. As Rahimi itself has perhaps made clear, applying the Bruin framework is not always as easy as perhaps the justices thought it was. And so because that is really the only live claim here, it may confirm the wisdom of the adage that if it's not necessary to decide the issue, it's necessary not to decide the issue. And this Court could instead just rest on the fact that the only live claim is the facial challenge, which fails for the reasons that I've already mentioned. Your Honor, at the end of the day, we have noticed in our 28 jayletters two circuits, the Sixth Circuit and the Tenth Circuit, who have recently reaffirmed their post-Heller pre-Bruin decisions that machine guns are not protected under the Second Amendment. At the end of the day, based on the arguments advanced in our brief and here today, the government is respectfully requesting that this Court join its sister circuits in so holding and in reaffirming that machine guns are not protected by the Second Amendment. Thank you. Very well. Thank you for your argument. Time has expired. The case is submitted and the Court will file a decision in due course. Please call the next case for argument.